UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>YAROSLAV VISHNEVSKI,<br><br>    Defendant. | Case No. 24-cr-40027-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Yaroslav Vishnevski's motions to suppress evidence obtained pursuant to an allegedly improperly obtained, overbroad search warrant that lacked probable cause and that led to self-incriminating statements (Docs. 36, 37, 45 & 68).[1] The Government has responded to the motions countering Vishnevski's arguments and further arguing that the search warrant was executed in good faith and that items seized were in plain view (Doc. 69). The Court held an evidentiary hearing on the matter on September 2, 2025. At the hearing, the Government called as witnesses Illinois State Police ("ISP") Special Agent Ryan Propst and U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agent Zachary Green; Vishnevski called no witnesses.

Vishnevski challenges a search of his residence, 14 and 16 East Logan Street, Harrisburg, Illinois, on May 2, 2024, along with statements in his subsequent interview. The search was conducted pursuant to an anticipatory search warrant issued the day before. It yielded numerous firearms, some of which form the basis of the indictment, and other evidence the Government

---

[1] It appears that the bases for Vishnevski's request for suppression have shifted from his written motions to the hearing. The Court has attempted to address all his contentions, but to the extent it has overlooked any, it invites Vishnevski to bring any omission to the Court's attention.

seeks to use at trial to prove its case. Vishnevski contends the search violated his Fourth Amendment rights because Propst, who requested the search warrant from a Saline County, Illinois, judge, omitted material information from his affidavit in support of his warrant request. Vishnevski also argues that the search warrant was not supported by probable cause and was overbroad. He claims his interview with law enforcement officers was unjustified because the search was unlawful and that his statements are therefore "fruit of the poisonous tree." The Government disagrees. It further argues that, even if the warrant were deficient, law enforcement officers acted in good faith in executing it and seized items that were in plain view during its execution.

      Vishnevski is charged in this case with:

| | |
|---|---|
| Count 1: | Receipt or possession of an unregistered rifle having a barrel of less than 16 inches; |
| Count 2: | Manufacturing a weapon covered by the National Firearms Act, namely, a rifle having a barrel of less than 16 inches, without registering it or paying the special occupancy tax; |
| Count 3: | Receipt or possession of an unregistered shotgun having a barrel of less than 18 inches; |
| Count 4: | Receipt or possession of an unregistered firearm, namely, a silencer; |
| Count 5: | Importation of a firearm, namely, a silencer, without authorization from the Attorney General; and |
| Count 6: | Possession of a firearm, namely, a short-barreled shotgun, with an obliterated serial number. |

The Government expects to use in support of its case the evidence seized in the May 2, 2024, search and the subsequent statements Vishnevski made.

**I.     Facts**

   **A.     <u>Witness Credibility</u>**

The Court finds both witnesses were credible as to facts about which they had personal knowledge and/or experience. This assessment is based on their demeanor while testifying, the foundations they had for testifying to certain facts, and the consistency of each witness's material testimony with other evidence in the case. Any inconsistencies in the witnesses' testimony were not material and did not detract from their overall credibility. As explained below, Propst did not knowingly, intentionally, or recklessly omit material facts from his affidavit in support of the search warrant, the warrant was not overbroad, the law enforcement officers executing the search warrant acted in good faith reliance on the facially valid warrant, items seized were within the lawful scope of the warrant or were in plain view, and the subsequent interview with Vishnevski was not fruit of an unlawful search subject to suppression.

   **B.     <u>Evidence</u>**

The credible evidence at the hearing established the following facts.

On April 25, 2024, ISP Special Agent Propst was assigned to an investigation of seized items—two suppressors, also known as firearm silencers. At the beginning of Propst's investigation, U.S. Department of Homeland Security Special Agent Kevin Parks told him that U.S. Customs and Border Patrol had seized two suppressors in a package from China addressed for delivery in Illinois. Propst was aware that mere possession of suppressors was illegal under Illinois law. The package was not marked to indicate it contained silencers or suppressors. Propst learned that the package was addressed to Vishnevski at 14 East Logan Street, Harrisburg, Illinois, and that more than thirty packages had been delivered to that address from China since January 2021, some of which were addressed to Brittney Hernandez, now known as Misty

Vishnevski.

Propst took possession of the seized items from Parks and began gathering information about Vishnevski and the address in question. The items appeared to Propst to be suppressors, as Parks had told him. Propst was aware that legal items such as a cleaning solvent trap, a filter, or a purifier could be used, with modification, as suppressors, but he had no recollection of whether anything needed to be done to the seized items before they could be used as suppressors.[2]

Propst also learned that Vishnevski used the houses at 14 and 16 East Logan Street as his residence and parked a travel trailer between the two houses. His investigation did not include reviewing Vishnevski's email communications because he did not have access to those communications. He also did not track the package using its USPS tracking number. Propst started planning a controlled delivery of the seized items that would appear to be delivered by a postal service, followed by a search of Vishnevski's residence pursuant to an anticipatory search warrant Propst hoped to obtain.

In preparing the application for an anticipatory search warrant, Propst followed a standard template. In his affidavit, Propst indicated the items seized were black metal firearm suppressors but did not indicate that the packaging was labeled as containing something other than suppressors or silencers. He also did not know, so did not indicate, whether the items seized would need to be modified before they could be used as suppressors. Based on his experience, Propst believed that the presence of firearm suppressors indicated that firearms as well as other associated items would also be present. Specifically, he believed any firearm attached to a

---

[2] ATF Firearms & Ammunition Technology Division Technical Bulletin 17-02 considers otherwise legal items that have holes or index markings showing where to drill holes to convert the item into a firearm suppressors to, in fact, be suppressors. The markings or holes are considered indications of intent to use the item as a firearm suppressor. Def.'s Ex. 1, Department of Homeland Security Report of Investigation 2.

suppressor would be evidence that Vishnevski intended to use the items seized as suppressors. Other items in the application were items the ISP had historically included in all search warrants relating to firearms. Accordingly, the warrant he sought covered a wide range of items associated with the illegal use of firearms and the identity of those using them.

During the preparation process, Propst had his supervisor sergeant and his master sergeant as well as a Saline County Assistant State's Attorney review his work. At the time, Propst did not know that delivery of the seized items had been cancelled by Vishnevski or the shipper. Propst finalized a draft packet, Government's Exhibit 1, for the State's Attorney's review and presentation to Hon. Jayson Clark, the presiding circuit judge in Saline County, in hopes that he would issue the warrant to be executed on May 2, 2024, after Vishnevski accepted the package. Judge Clark reviewed the warrant application packet, had no questions for Propst about the application, and signed the warrant on May 1, 2024.

Once Judge Clark issued the warrant and relying on the validity of that warrant, Propst began putting into action his plan for a controlled delivery of the seized items and subsequent search of Vishnevski's property. He held an operational meeting with those who would be involved in the search to determine the resources needed to safely conduct the operation.

The following day, May 2, 2024, Propst conducted another operational meeting immediately before the controlled delivery. ATF Special Agent Green, a specialist in privately manufactured firearms ("PMFs"), attended that meeting but did not review the search warrant personally until it was being executed. Law enforcement surveilled Vishnevski's residence as an officer disguised as a delivery person delivered the package containing the previously confiscated items, leaving it on the front doorstep of 14 East Logan Street. Several hours later, the surveillance team reported to Propst that Vishnevski had emerged from the house, retrieved

the package, and took it inside the house. Propst then gave the command to execute the search warrant, but before the tactical units could get to the house, Vishnevski left the house without the package and drove away.

As for the search itself, first, in light of the fact that there was another occupant of the house and many firearms present, the ISP SWAT team conducted a cursory protective sweep of the house to ensure it would be safe when others entered. After the protective sweep, ISP Special Agent Hennessy walked through the areas to be searched taking photographs and video recordings of those areas to document how things were before the searching began. The agents performing the protective sweep reported to the searching agents that they saw a 3D printer and a "ghost gunner" machine, a machine used to make PMFs without serial numbers, also called "ghost guns." Based on the presence of both of these machines and the delivery of silencers, the searchers expected to find PMFs, other firearms possibly with silencers attached, evidence of orders placed with the Chinese company, and other evidence of a ghost gun manufacturing operation.

Next, agents began searching the areas covered by the warrant. Green saw in the dining room two 3D printers and what he believed were the two silencers from the controlled delivery. The silencers were next to a 3D-printed AR-15 pistol, which he believed was illegal under Illinois law. The search continued and yielded more than 300 receivers (the part that houses the components that make the firearm fire) and other evidence of an ongoing ghost gun manufacturing and distribution operation. While the search was being conducted, Propst and Green interviewed Misty Vishnevski and the defendant at another location. Vishnevski stated at that time that he had cancelled the seized order but that it was delivered anyway.

After the May 2 search, Green conducted a search of Vishnevski's phone pursuant to

another search warrant. And it was not until Vishnevski raised the cancellation of the order for the seized items in his June 12, 2025, motion to suppress that Green searched the data from Vishnevski's phone for evidence of cancellation. Green discovered emails indicating that the Chinese company had shipped the seized items labeled as car fuel filters on March 31, 2024. Vishnevski had not received the package by April 13, 2024, so he told the company to ship the order again. Not having received a response to his email by April 16, 2024, Vishnevski asked for a refund instead. The following day, the Chinese company told Vishnevski that the original package had been lost and that he could either have the items reshipped or get a refund of the purchase price. Vishnevski instructed the company to reship his order immediately. On April 18, 2024, the company told Vishnevski that it was not able to reship the items so it would issue him a refund.

## II.     Analysis

Vishnevski's motions assert various Fourth Amendment violations. The Fourth Amendment to the Constitution provides, in pertinent part, that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Where evidence is obtained in violation of this guarantee, the exclusionary rule generally requires the evidence to be suppressed at a criminal trial where the utility of the rule in deterring unconstitutional police behavior outweighs its costs. *See Brock v. United States*, 573 F.3d 497, 499-500 (7th Cir. 2009).

### A.     Affidavit in Support of Warrant

Vishnevski first challenges the validity of the anticipatory search warrant on the basis that Propst omitted material information from his affidavit in support of the warrant.

If a criminal defendant believes that an affidavit in support of a facially-valid search

7

warrant contains materially false statements or makes material omissions, he may attempt to challenge the validity of the search warrant and the fruits of a search pursuant to that warrant. *Franks v. Delaware*, 438 U.S. 154, 164 (1978). The defendant must show the omission was "designed to mislead or was made in reckless disregard of whether it would mislead." *United States v. McMurtrey*, 704 F.3d 502, 511 n.5 (7th Cir. 2013) (citing *United States v. Tate,* 524 F.3d 449, 454-55 (4th Cir. 2008)). A negligent omission is not enough. *United States v. Residence Located at 218 Third Street,* 805 F.2d 256, 258 (7th Cir. 1986). He must also show that the omitted facts were material, that is, that they could reasonably have defeated a showing of probable cause. *Tate*, 524 F.3d at 457. If the defendant carries his burden of showing by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, omitted a material statement, the warrant must be voided and the fruits of the search must be excluded as if there was no probable cause. *Franks*, 438 U.S. at 156; *United States v. Whitley*, 249 F.3d 614, 620-21 (7th Cir. 2001).

  Vishnevski first faults Propst for omitting the fact that his order for the seized items in the package from China had been cancelled before the package was delivered to Vishnevski's residence. However, such information was not known to Propst or any other law enforcement officer until well after Propst prepared the affidavit in support of the warrant. That omission was not designed to mislead Judge Clark and was not made in reckless disregard of whether it would mislead him.

  Similarly, Vishnevski faults Propst for not using the USPS tracking number to find the status of Vishnevski's order. Again, while failing to check the tracking number may have been negligent, no evidence shows Propst was knowingly, intentionally, or recklessly omitting material facts in his affidavit about Vishnevski's order. Further, Vishnevski has failed to show

8

what information Propst would have obtained had he tracked the package and that such information would have been material to Judge Clark's probable cause finding.

Vishnevski also faults Propst for failing to inform Judge Clark that the items confiscated might have been innocuous items that would not have been illegal if Vishnevski did not intend to convert them into suppressors. However, Propst honestly believed the items were suppressors when he made his affidavit. He had been told as much by Homeland Security Special Agent Parks and, after his own inspection, he came to honestly believe they were suppressors, illegal under Illinois law. Further, the fact that the package was labeled as containing something other than suppressors was not material to the finding of probable cause. Whether the contents of the package were legal or illegal, the package would not have been labeled "suppressors," so its labeling was not likely to have made a difference in Judge Clark's evaluation of Propst's report about what the contents really were.

Vishnevski has not shown that Propst knowingly, intentionally, or with reckless disregard for the truth omitted a material fact in his affidavit. Accordingly, suppression is not warranted on this basis.

    B.    <u>Probable Cause</u>

The information in the affidavit was sufficient to establish probable cause, as Judge Clark correctly found when he issued the anticipatory search warrant. An anticipatory search warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." 2 W. LaFave, Search and Seizure § 3.7(c), p. 398 (4th ed. 2004), *quoted in United States v. Grubbs*, 547 U.S. 90, 94 (2006). As with all other warrants, probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S.

9

213, 238 (1983).  For anticipatory search warrants triggered by a certain event, probable cause exists where (1) it is *now probable* that a triggering condition is likely to occur, and that, after that triggering condition occurs, (2) contraband or evidence of a crime *will be* on the described premises (3) when the warrant is executed.  *Grubbs*, 547 U.S. at 96-97.  "Courts have adopted the requirement that, where contraband is expected to be delivered to a place, it must be 'on a 'sure course' to the place to be searched to support a finding of probable cause for an anticipatory warrant."  *United States v. Elst*, 579 F.3d 740, 745 (7th Cir. 2009) (internal quotations omitted).  This "ensures that a sufficient nexus between the parcel and the place to be searched exists."  *Id.* (internal quotations omitted).

It was a fair probability that the package was on a "sure course" to Vishnevski's residence when it was originally intercepted by Border Patrol and that the intervention of law enforcement would not cause the package to substantially deviate from that course as originally addressed.  It was also likely that Vishnevski would accept the illegal suppressors sent to him.  Once Vishnevski took the suppressors into his residence, there was a fair probability that they, and other evidence of the crime of possessing suppressors, would be found there during a search immediately following the controlled delivery.  Thus, Judge Clark correctly found probable cause to believe contraband was on a course to be delivered to, and subsequently found in, Vishnevski's residence along with other evidence of the crime.  Thus, there was probable cause to issue the anticipatory search warrant.

The Government has established probable cause to issue the warrant based on the statements in Propst's affidavit.  Accordingly, suppression is not warranted on this basis.

    C.    <u>Scope of Warrant</u>

Vishnevski challenges the warrant as unreasonably broad because it authorized seizure of

items beyond the two suppressors and their packaging.

The Fourth Amendment requires that warrants "particularly describ[e] . . . the persons or things to be seized." U.S. Const. amend. IV. "The manifest purpose of this particularity requirement was to prevent general searches" and to ensure "that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). The particularity requirement also "ensures that the scope of a search will be confined to evidence relating to a specific crime that is supported by probable cause." *United States v. Vitek Supply Corp.*, 144 F.3d 476, 481 (7th Cir. 1998). "It is enough . . . if the warrant cabins the things being looked for by stating what crime is under investigation." *United States v. Bishop*, 910 F.3d 335, 337 (7th Cir. 2018). In contrast, warrants that are "overbroad, that is, that allow officers to search for items that are unlikely to yield evidence of the crime, violate the Fourth Amendment." *United States v. Vizcarra-Millan*, 15 F.4th 473, 502 (7th Cir. 2021).

The warrant at issue in this case permitted a search for the particular items seized at the border—the two suppressors and the packaging in which they were mailed—as well as a host of other items that were likely to provide evidence of the crime—unlawful use of a weapon in violation of Illinois law, 720 ILCS 5/24-1. Such evidence included, but was not limited to, evidence that Vishnevski had ordered the suppressors, that he occupied the residence searched, and that he intended to use the suppressors on firearms. Judge Clark agreed and accordingly issued the warrant. Suppression is not warranted on the basis that the warrant was overbroad.

D.   Good Faith Exception

Even if the warrant were not actually supported by probable cause or were overly broad, evidence seized in the search would not be subject to suppression because of the good faith

11

exception to the exclusionary rule.

Under the good faith exception, evidence need not be suppressed if the law enforcement officers executing a facially valid warrant did so in good faith even if the warrant itself was faulty. The Government has the burden of proving a law enforcement officer acted in good faith. When an officer reasonably relies on a search warrant that is later declared invalid, the search is presumptively valid unless the defendant can show one of several things: that the judge issuing the warrant wholly abandoned his judicial role as neutral arbitrator; that the officers were dishonest or reckless in preparing the affidavit in support of the warrant; or that the warrant was so lacking in probable cause that reliance on it would be objectively unreasonable even though a judge issued the warrant. *United States v. Leon*, 468 U.S. 897, 923 (1984); *see United States v. Vizcarra-Millan*, 15 F.4th 473, 503 (7th Cir. 2021). "Where an officer goes through the effort to secure a warrant, we presume the officer acted in good faith." *Vizcarra-Millan*, 15 F.4th at 502.

The Court has already found Propst was not dishonest or reckless in preparing his affidavit. There is no evidence that, even if Judge Clark were wrong about probable cause or the scope of the warrant, he wholly abandoned his neutral judicial role. And finally, nothing on the face of the warrant would lead a reasonable officer to suspect it was not valid. Propst went to the effort to obtain a warrant, which creates the presumption of good faith, and no evidence shows objectively unreasonable reliance on that warrant in conducting the search it authorized.

Further, to the extent the probable cause to support the warrant actually dissipated because the order was cancelled—by whom it does not matter for Fourth Amendment purposes—the officers executing the warrant had no knowledge that the delivery was not, in fact, on a "sure course" to Vishnevski when the warrant was executed. Thus, to the extent probable cause may have actually dissipated, officers executing the warrant did so in good faith because

they did not know the order had been cancelled.

For these reasons, any evidence obtained in violation of Vishnevski's Fourth Amendment rights need not be suppressed because law enforcement officers involved obtained and executed the search warrant in good faith.

E.        <u>Plain View Doctrine</u>

The Government contends that, even if the warrant were overbroad because it included items other than the two suppressors and their packaging, the items seized were in plain view.

Under the plain view doctrine, officers may seize incriminating evidence in plain view while they conduct a cursory protective sweep or are searching for items that are properly specified in the warrant. *See Maryland v. Buie*, 494 U.S. 325, 330 (1990) (noting seizure of item in plain view during lawful protective sweep was constitutional). For seizure of items in plain view to be constitutional, three conditions must be met: "First, the officer may not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Second, the item must have been in plain view, and third, its incriminating character must also be immediately apparent." *United States v. Contreras*, 820 F.3d 255, 262 (7th Cir. 2016) (citing *Horton v. California,* 496 U.S. 128, 136 (1990)).

Items suggesting a PMF manufacturing operation—including 3D printers, a ghost gunner, and hundreds of PMFs—were seen in plain view by the ISP SWAT team conducting the protective sweep prior to the search as well as by the searching officers operating in good faith reliance on the warrant. Additionally, suppressors in close proximity to or attached to firearms were observed in plain view, providing evidence that Vishnevski intended to use the items in the seized package as suppressors. Agents also observed in plain view short-barreled rifles and shotguns.

Further, under the severability doctrine, searchers were justified in searching for the suppressors and their packaging, the items Vishnevski admits were proper targets of the search, even if the entire warrant was overbroad. *See, e.g., United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984). While the suppressors were located fairly early in the search, the officers were justified in continuing the search for the packaging. During their authorized search, they saw in plain view the aforementioned suspicious items.

For these reasons, the items were subject to seizure under the plain view doctrine and are not subject to suppression.

F.      Statements to Law Enforcement

Vishnevski has abandoned his assertion that his statements and evidence to which they led must be suppressed because he gave the statements in violation of his right to counsel under *Miranda v. Arizona*, 384 U.S. 436, 460-61 (1966). Instead, he rests his claim to suppression solely on the assertion that his interview was fruit of the poisonous tree of the unconstitutional search. The Court having found the search constitutional, it must reject Vishnevski's claims that his statements must be suppressed.

**III.    Conclusion**

For the foregoing reasons, the Court **DENIES** Vishnevski's motions to suppress (Docs. 36, 37, 45 & 68).

**IT IS SO ORDERED.**
**DATED: September 10, 2025**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**