UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

YAROSLAV VISHNEVSKI,

    Defendant.

Case No. 24-cr-40027-JPG

## MEMORANDUM AND ORDER

This case is before the Court on Defendant Yaroslav Vishnevski's Motion to Dismiss the Indictment Pursuant to the Second Amendment to the United States Constitution and *New York State Rifle & Pistol Association, Inc. v. Bruen* (Doc. 98). The Government filed a response (Doc. 100), and Vishnevski filed a reply (Doc. 104).

## I.    BACKGROUND

On April 22, 2024, the United States Custom and Border Patrol intercepted a parcel containing two suspected firearm silencers. The parcel was inbound to the United States from China and was addressed to Vishnevski. On April 25, 2024, Homeland Security Investigations ("HSI") contacted the Illinois State Police ("ISP") and informed it of the intercepted parcel. HSI released the suspected silencers to ISP for a controlled delivery to Vishnevski's residence. ISP also applied for and received an anticipatory search warrant for his residence.

On May 2, 2024, ISP conducted the controlled delivery of a package containing the suspected silencers and a GPS tracker. Vishnevski took the package inside of his residence. Shortly after, he left the residence without the package, got into his car, and drove away. Agents conducted a traffic stop and recovered the GPS device that was placed in the package, indicating that Vishnevski had opened it. The agents then executed the search warrant. During the search,

the agents recovered the suspected silencers that had been removed from the packaging. They also found other weapons, weapon parts, and 3D printers. They seized numerous items, including firearms, ammunition, and other firearm related equipment.[1]

As a result of the controlled delivery and the items found during the execution of the search warrant, the grand jury indicted Vishnevski on six counts:

Count 1:   Receipt or possession of an unregistered short-barreled rifle in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.

Count 2:   Manufacturing a short-barreled rifle and failing to register it and pay a special occupancy tax in violation of 26 U.S.C. §§ 5841, 5861(f), and 5871.

Count 3:   Receipt or possession of an unregistered short-barreled shotgun in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.

Count 4:   Receipt or possession of an unregistered silencer in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.

Count 5:   Importing a silencer without authorization from the Attorney General in violation of 18 U.S.C. §§ 922(l) and 924(a)(1)(C).

Count 6:   Possession of a short-barreled shotgun with an obliterated serial number in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B).

The indictment also contains a forfeiture allegation.

In the instant motion, Vishnevski asks the Court to dismiss the entire indictment pursuant to the Second Amendment and the Supreme Court case of *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). He raises a facial and as-applied challenge to 18 U.S.C. § 922(l), the statute he is charged with violating in count 5. For the remaining statutes at issue, he raises only a facial challenge.[2]

---

[1] Vishnevski previously asked the Court to suppress evidence arising from the search (Docs. 36, 37, 45, 68). The Court denied the motions (Doc. 83).
[2] Vishnevski argues that he is also bringing an as applied challenge to count 4 because there is an issue of whether a

II.    **ANALYSIS**

The Second Amendment provides "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In the last twenty years, the Supreme Court has made landmark rulings about the Second Amendment's meaning and application. One of those decisions, *Bruen*, 597 U.S. 1, set forth a two-step test to evaluate whether a firearm regulation is constitutional under the Second Amendment. Before the Court reaches the *Bruen* analysis, it must evaluate the Government's argument that counts 1-4 of the indictment, which charge Vishnevski with violations of the National Firearms Act ("NFA"), are governed by a much earlier Supreme Court case: *United States v. Miller*, 307 U.S. 174 (1939).

A.   *United States v. Miller*:

In *Miller*, the defendants were charged with possession of an unregistered short-barreled shotgun in violation of the predecessor to 26 U.S.C. § 5861(d). 307 U.S. at 175. The Supreme Court looked to early colonial laws that regulated musket length and determined that the Second Amendment does not guarantee the right to possess an unregistered, short-barreled shotgun. *Id.* at 178–82. As such, it upheld the statute. *Id.* at 183. Even though *Miller* was decided in 1939, and the law surrounding the Second Amendment has changed significantly since that time, *Miller* is still good law, and this Court must follow it. *See United States v. White*, 97 F.4th 532, 539 (7th Cir. 2024) (explaining that if "a Supreme Court decision is directly controlling, our job

---

law-abiding citizen would have time to register the silencer. But his argument must fail because he does not allege that *he himself* did not have enough time to register the silencer. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011) (stating that, when presented with an as-applied challenge, a court examines "only the facts of the case before [it] and not any set of hypothetical facts under which the statute might be unconstitutional").

is to follow it . . . even if 'intervening decisions have eroded [its] foundation.'" (citation omitted)); *United States v. Rush*, 130 F.4th 633, 637 (7th Cir. 2025) ("The rule of law demands we follow binding Supreme Court precedent. And, the Supreme Court's more recent Second Amendment jurisprudence does not reject *Miller* . . . but rather directly engages with it."). Further, both this Court and the Seventh Circuit have said that *Miller* applies equally to short-barreled rifles. *See United States v. Rush*, No. 22-CR-40008-JPG, 2023 WL 403774, at *2 (S.D. Ill. Jan. 25, 2023); *Rush*, 130 F.4th at 637.

> i.   *Counts 1 and 3 – Receipt or Possession of Unregistered Short-Barreled Shotgun and Rifle*:

Vishnevski's arguments that counts 1 and 3 violate his Second Amendment rights cannot be squared with *Miller*. *Miller* held that the possession of an unregistered short-barreled shotgun is not protected by the Second Amendment. 307 U.S. at 178, 183. *Rush* said that holding applies equally to short-barreled rifles. 130 F.4th at 637. As such, *Miller* and *Rush* are dispositive and bring Vishnevski's challenges to counts 1 and 3 of the indictment to a halt.

> ii.  *Count 2 – Manufacturing a Short-Barreled Rifles and Failing to Register it and Pay a Special Occupancy Tax*:

The Court finds that *Miller* also forecloses Vishnevski's argument that count 2 violates his Second Amendment rights. *Miller* focused on the predecessor to § 5861(d), which prohibits the receipt or possession of certain unregistered weapons, including short-barreled firearms. However, it appears that the reasoning of *Miller* applies equally to the manufacturing of short-barreled firearms. In *Rush*, the Seventh Circuit interpreted *Miller* to "emphasize two distinct features of Second Amendment jurisprudence." *Id.* at 637. "One, the type of weapon at issue is of critical importance. Weapons, like machine guns, that are 'not typically possessed by law-abiding citizens for lawful purposes' remain unprotected." *Id.* (quoting *District of Columbia v.*

*Heller*, 554 U.S. 570, 625 (2008)) "And two, licensing regimes designed to ensure firearm applicants 'are, in fact, law-abiding responsible citizens'—including those that impose some pecuniary cost on the applicants—are categorically different than weapons bans." *Id.* (quoting *Bruen*, 597 U.S. at 38 n.9 (citation omitted)). Section 5861(f) makes it unlawful to manufacture certain firearms, including short-barreled firearms, without complying with the NFA requirements, including registering the weapon and paying the making tax. *See* 26 U.S.C. § 5822. It only applies to firearms that Congress has deemed are "likely to be used for criminal purposes," *see United States v. Thompson/Ctr Arms Co.*, 504 U.S. 505, 517 (1992) (plurality opinion), and it is not an outright ban. Based on the reasoning of *Miller* and *Rush*, it follows that the *making* of "dangerous and unusual firearms" like a short-barreled rifle is not covered by the plain text or historical understanding of the Second Amendment.

To get around *Rush* and *Heller*, Vishnevski argues that the use of a shorter barrel for home defense was not addressed in those cases. But a similar argument was rejected in *Rush*. The defendant in *Rush* alleged that short-barreled rifles are popular today, and argued that, because of their size and maneuverability, they are ideal for self-defense. This Court did not reach the argument because it determined that it runs smack into *Heller*'s finding that they are not, and Congress's decision to regulate them under the NFA precisely because they are not. *See Rush*, 2023 WL 403774, at *3 n.2. The Seventh Circuit found the argument to be inadequate because the defendant did not "specifically connect that alleged common use to a lawful purpose like self-defense." *Rush*, 130 F.4th at 640. Both findings apply here. Vishnevski's argument is directly contrary to the statements in *Heller* and the findings of Congress. Further, he has alleged only a conceivable use for self-defense, not a common one. As such, Vishnevski's argument as

to count 2 is precluded by *Miller* and *Rush*.

### iii. Count 4 – Receipt or Possession of an Unregistered Silencer:

The Government argues that *Miller* should also halt Vishnevski's challenge to count 4 of the indictment. The Court acknowledges that *Miller* upheld a challenge to the predecessor to § 5861(d), which is the provision Vishnevski is charged under in count 4. However, it is not sure that the reasoning of *Miller* can be stretched so far to apply to silencers. In *Miller*, the Supreme Court examined early colonial laws that regulated musket length, and based on those laws, it determined that the Second Amendment does not guarantee the right to keep and bear a short-barreled shotgun. 307 U.S. at 178–82. In *Rush*, the Seventh Circuit determined that the holding of *Miller* applies equally to short-barreled rifles. 130 F.4th at 637. In making this determination, it noted three similarities between short-barreled shotguns and rifles. First, "[b]oth are long guns with shortened barrels, which are dangerous because they are more powerful than traditional handguns yet are easier to conceal." *Id.* Second, "both involve a characteristic that makes the firearm especially attractive to criminals while adding little—if any—functionality to the firearm for lawful use." *Id.* Third, "both were regulated under the NFA provisions in effect at the time of the defendants' convictions—provisions that simply required the registration of the firearms." *Id.* It is not clear that the first two similarities apply to silencers. To begin, the record does not establish that a silencer makes a gun more powerful. In addition, it seems unlikely that a silencer makes a gun easier to conceal, at least not in the same way that a short-barreled firearm does. Finally, it appears that a silencer adds functionality to the firearm for a lawful purpose. Since the Court questions whether *Miller* applies to silencers, it will analyze count 4 under *Bruen*.[3]

---

[3] The Court notes that Vishnevski has not established that there are distinctions between short-barreled firearms and silencers and that those distinctions "present a relevant and material difference that would make one regulation

6

B.   The *Bruen* Analysis:

Now that the Court has evaluated counts 1-4 under *Miller*, it will turn to the Supreme Court decision in *Bruen*. In *Bruen*, the Supreme Court considered a New York regulation requiring an applicant for a public carry license to show a heightened need for self-protection. 597 U.S. at 1. The Court found that the Second Amendment "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" extends to carrying handguns in public for self-defense. *Id.* at 9, 32–33. It held that the constitutionality of a firearm regulation depends solely on whether the restriction is consistent with "the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. There is no "interest balancing" or "means-end scrutiny" inquiry in this determination. *Id.* When a regulation limits conduct covered by the Second Amendment, the Government "must affirmatively prove" that the regulation is part of the historical tradition, or the regulation is unconstitutional. *Id.* at 19, 24. Thus, the two— and only—relevant inquiries are (1) does the Second Amendment's plain text cover the regulated conduct and (2) is the regulation consistent with the country's historical tradition. *Id.* at 17. If the regulated conduct is covered, it is presumed that the Constitution protects that conduct, and if there is no historical tradition of regulating that conduct, the regulation is unconstitutional. *Id.* at 24.

The Seventh Circuit has already conducted a *Bruen* analysis on 18 U.S.C. § 922(k), the provision Vishnevski is charged under in count 6. *See United States v. Reyna*, 165 F.4th 1056

---

constitutional and the other not." *United States v. Robinson*, No. 23-12551, 2025 WL 870981, at *5 (11th Cir. Mar. 20, 2025). Some courts, including the Eleventh Circuit, have said that "[a] successful Second Amendment challenge to the NFA must distinguish itself from the challenge the Supreme Court rejected in *Miller*." *Id.* However, since *Rush* did not make it clear that *Miller* applies to all NFA firearms, and the Government has not argued that Vishnevski failed to meet his burden to distinguish *Miller*, the Court declines to hold (at least on this record) that this claim is precluded by *Miller*.

(7th Cir. 2026). At *Bruen* step one, it found it "hard to say with confidence that the conduct regulated by § 922(k) is categorically outside the prima facie scope of the right." *Id.* at 1062. Accordingly, it assumed "that possession of a deserialized firearm is not categorically excluded from the scope of the right." *Id.* At *Bruen* step two, it evaluated founding era laws and practices and determined that "marking, inventorying, or otherwise publicly tracking firearms is part of our historical tradition of firearm regulation." *Id.* at 1062–64. It concluded that "§ 922(k), which punishes the knowing possession of a deserialized firearm, is . . . consistent with this tradition." *Id.* at 1064. Therefore, it held that "§ 922(k) is compatible with the Second Amendment." *Id.* Based on *Reyna*, Vishnevski's argument that § 922(k) is facially unconstitutional fails, and the Court will not dismiss count 6 of the indictment.

Since the Court already rejected Vishnevski's arguments as to counts 1, 2, 3, and 6 as precluded by *Miller* and *Reyna*, its *Bruen* analysis will be focused on the two remaining counts: 4 and 5.

       i.  Bruen *Step One:*

At the first step, the Court must determine whether the Second Amendment's plain text covers Vishnevski's conduct. The Second Amendment protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II. The parties do not dispute that Vishnevski is a part of "the people" as that word is used in the Second Amendment. Thus, the Court must determine whether the remaining firearm at issue—a silencer—is within the scope of "Arms" that an individual is entitled "to keep and bear" and whether the provisions that Vishnevski is charged under constitute "infringements" on Second Amendment rights.[4] *See Rush*, 130 F.4th at 638,

---

[4] It is unclear which party has the burden on step one. *Bruen* did not decide this. The Government argues that it is Vishnevski. It points to the general rule that a party challenging a statute's constitutionality bears the initial burden

8

640.

### 1. Scope of "Arms:"

For the two remaining counts, there is one type of firearm at issue: silencers. The Court will evaluate whether a silencer is an "Arm" within the scope of the Second Amendment.

### a. Silencers:

Neither the Supreme Court nor the Seventh Circuit has determined whether a silencer is an "Arm" that is protected by the Second Amendment. For other courts that have addressed the question, the consensus is that it is not. *See e.g.*, *United States v. Bradley*, 766 F. Supp. 3d 769, 781 (S.D. Ohio 2025) (collecting cases). The Government does not make the argument, so for the purposes of this motion, the Court will assume that silencers are "Arms" within the scope of the Second Amendment.[5]

### 2. Second Amendment Infringement:

The provisions that Vishnevski is charged under in the remaining counts impose two

---

of showing that his conduct is protected. It also cites *Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023). *Bevis* involved challenges to an Illinois statute and three municipal laws that regulated assault weapons and high-capacity magazines. *Id.* at 1182. The plaintiffs sought preliminary injunctions to suspend the operation of the laws. *Id.* at 1187. The Seventh Circuit stated that, "[i]n order to show a likelihood of success on the merits, the plaintiffs . . . have the burden of showing that the weapons addressed in the pertinent legislation are Arms" within the meaning of the Second Amendment. *Id.* at 1194. However, in *Rush*, the Seventh Circuit expressly declined to decide the question, which indicates that it does not believe that *Bevis* resolved the issue. 130 F.4th at 638 n.3. This Court also will not decide the issue because Vishnevski's challenges fail regardless of the burden.

[5] However, in doing so, it wants to point out that it does not believe the record shows that the plain text of the Second Amendment covers the possession of an unregistered silencer. Vishnevski does not establish that silencers are in common use for self-defense; rather, he argues that they have a conceivable use for self-defense. He uses an example of a home invasion where there is more than one assailant in the home. He says that, in this scenario, a firearm has one problem: it creates a loud noise and gives away the homeowner's position. But if a silencer is used, a homeowner maintains their advantage of being able to hide and sneak around their home to eliminate any other assailants. The Court believes there are many counterarguments. For example, the loud noise will frighten and disorient the assailant and will likely cause them to flee. Further, silencers "render weapons unwieldy" and make them "more difficult to conceal." *See United States v. Beaty*, No. 6:22-CR-95-PGB-DCI, 2023 WL 9853255, at *8 (M.D. Fla. Jan. 20, 2023). It also finds that Vishnevski's theory goes against the construct of many self-defense laws, which allow the homeowner to use *only reasonable force* to *protect their home*. The goal of the self-defense doctrine is to allow homeowners to protect their home, not to make sure they kill every intruder.

different types of restrictions: registration and taxation requirements (count 4) and an importation ban (count 5). The Court will analyze whether either of these restrictions infringe on the Second Amendment.

### a.   Registration and Taxation Requirements:

The NFA's registration and taxation requirements generally do not infringe on Second Amendment rights. They do not constitute an outright ban on short-barreled firearms and silencers; rather, they establish a registration and taxation scheme applicable to them. An individual seeking to register a NFA firearm must submit the appropriate form. 26 U.S.C. §§ 5812(b), 5822. The form requires the applicant to identify the firearm and provide copies of his fingerprints and his photograph. 26 U.S.C. §§ 5812(b), 5822. The applicant must also submit any applicable tax payment with the application. 26 U.S.C. §§ 5812(b), 5822. After receiving the application and tax payment, the Bureau of Alcohol, Tobacco, Firearms, and Explosives determines whether the applicant is legally eligible to possess a firearm. 27 C.F.R. § 479.86. The only valid basis for denying the application is if the applicant's possession of the NFA firearm would be in violation of the law. 27 C.F.R. §§ 479.65, 479.86. In other words, so long as the applicant submits the required materials and his possession of the firearm would not be in violation of the law, the federal government must register the item.

The Supreme Court has indicated approval of such shall-issue regimes. *See Bruen*, 597 U.S. 1, 38 n.9 ("[N]othing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes . . . which . . . are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'"); *id.* at 80 (Kavanaugh, J., concurring) ("[S]hall-issue licensing regimes are constitutionally permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in

10

that manner in practice."). So has the Seventh Circuit. *See Rush*, 130 F.4th at 637 ("[L]icensing regimes designed to ensure firearm applicants 'are, in fact, law-abiding responsible citizens'— including those that impose some pecuniary cost on the applicants—are categorically different than weapons bans." (citation omitted)). Other circuits have read the language in *Bruen* to mean that shall-issue regimes, like the NFA, are presumptively constitutional. *See e.g.*, *United States v. Peterson*, 161 F.4th 331, 339 (5th Cir. 2025) (stating that NFA's "suppressor-licensing scheme is presumptively constitutional"); *Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211, 222 (4th Cir. 2024) ("So, in accord with the Supreme Court's 'shall-issue' discussion, we hold that non-discretionary 'shall-issue' licensing laws are presumptively constitutional and generally do not 'infringe' the Second Amendment right to keep and bear arms under step one of the *Bruen* framework."); *Beckwith v. Frey*, No. 25-1160, 2026 WL 914624, at *7 (1st Cir. Apr. 3, 2026) (explaining that *Bruen* said that shall-issue regimes are "presumptively constitutional unless a challenger could show that they were abusive toward Second Amendment rights").

Vishnevski argues that the NFA is not a true shall-issue regime because it requires that the applicant pay a tax for the privilege of legally owning the firearm. He says this violates the Second Amendment because it imposes a charge for the enjoyment of a constitutional right. To make this argument, he cites to *Murdock v. Pennsylvania*, 319 U.S. 105 (1943). The Court disagrees for three reasons. First, the tax has been upheld as a valid exercise of legislative taxing authority. *See e.g.*, *Sonzinsky v. United States*, 300 U.S. 506, 514 (1937); *United States v. Lim*, 444 F.3d 910, 913 (7th Cir. 2006). Second, the "fee jurisprudence" principles applied in *Murdock* embody means end-scrutiny. *Forsyth Cnty v. Nationalist Movement*, 505 U.S. 123, 137 (1992) ("The tax at issue in *Murdock* was invalid because it was unrelated to any legitimate state

11

interest, not because it was of a particular size."). The Supreme Court, in *Bruen*, expressly

rejected using means-end scrutiny in the Second Amendment context. 597 U.S. at 19.

Accordingly, the "fee jurisprudence" principles set forth in *Murdock* conflict with the Supreme

Court's decision in *Bruen*. Finally, the Seventh Circuit has indicated that a licensing scheme may

still be a shall-issue regime even if it imposes a pecuniary cost on applicants. *See Rush*, 130 F.4th

at 637.

Based on this Court's conclusion that the NFA is a shall-issue regime, and the Supreme

Court's and Seventh Circuit's statements indicating approval of such licensing schemes, the

NFA's licensing and taxation requirements are presumptively lawful. To overcome this

presumption, Vishnevski must argue that the requirements are unconstitutional as applied to him.

*See Bruen*, 597 U.S. 1, 38 n.9 (stating that a shall-issue regime may be subject to constitutional

challenges if it is put "toward abusive ends" through "lengthy wait times in processing license

applications or exorbitant fees"). He fails to do so. In fact, he cannot. He has never submitted any

NFA compliance materials. Since Vishnevski has not overcome the presumption that the

registration and taxation requirements are constitutional, the Court will not dismiss count 4 of the

indictment.

b.   Importation Ban:

18 U.S.C. § 922(l), the provision Vishnevski is charged under in count 6, imposes an

outright ban on the importation of certain firearms, including silencers. The Government has not

argued that § 922(l) does not infringe on Second Amendment rights. For the purposes of this

motion, the Court will assume that § 922(l) infringes on Second Amendment rights and will

forge ahead to determine whether the regulation is supported by a historical analogue.

       *ii.*   Bruen *Step Two:*

At the second step, the Government bears the burden to establish that the regulations are "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. It is not necessary that there be a "historical *twin*." *Id.* at 30. If a regulation at our Nation's founding was adopted to address a particular problem, it is likely that a similar modern law addressing a similar problem is permissible so long as it does not extend beyond the founding era regulation's reach and is at least analogous to the historical precursor. *United States v. Rahimi*, 602 U.S. 680, 692 (2024). The modern court must ask the "why" and "how" of the regulations to determine if they are close enough to pass constitutional muster. *Id.* Since the Court determined that Vishnevski's conduct with respect to count 4 is not protected by the plain text of the Second Amendment, its analysis at step two is limited to count 5.

The Court finds that the Government has met its burden to show that 18 U.S.C. § 922(l) comports with our historical tradition of regulating firearms. Section 922(l) makes it unlawful for a person to knowingly import any firearm or ammunition. However, § 925(d)(3) provides an exception to the importation ban for almost all firearms that are not covered by the NFA. Accordingly, it only applies to firearms that Congress has deemed to be dangerous weapons that are susceptible to exploitation by criminals. *See Thompson/Ctr. Arms Co.*, 504 U.S. at 517 (plurality opinion). The United States has a long history of regulating dangerous and unusual weapons. *See Heller*, 554 U.S. at 627 (citing twelve different authorities to establish that there is a "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'"); *Rush*, 130 F.4th at 643 ("[S]ince before our founding, continuing through the lives of the founding generation, and even lasting until today there has stood an unbroken line of common sense

13

regulations permitting our duly elected representatives to limit weapons where the likely use for the weapon is a violent breach of the peace."); *see also Bruen*, 597 U.S. at 47. These regulations addressed broad concerns about increased risk of violence and criminal misuse. Silencers have multiple characteristics that make them dangerous. They reduce the sound of gunfire and hinder detection, which complicates law-enforcement response. Based on these characteristics, silencers are well within the scope of the historical regulation of dangerous and unusual weapons.

Section 922(l) also fits within the historical tradition of regulating the commercial sale and distribution of firearms. In *Heller*, the Supreme Court stated that "conditions and qualifications on the commercial sale of arms" are presumptively lawful. 554 U.S. at 627. Further, since the pre-founding era, this Nation has imposed restrictions on the interstate movement of firearms. *See Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017) (stating that "colonial governments substantially controlled the firearms trade," and this "regulation included some restrictions on the commercial sale of firearms"). Connecticut prohibited residents from selling firearms outside of the colony. *Id.* Similarly, a Virginia law allowed residents to sell arms and ammunition to "any of his majesties loyall subjects inhabiting this colony" but that liberty did not extend to sales to others. *Id.* at 685 n.18. (citation omitted). Section 922(l) is a modern version of those regulations. As such, it is constitutional both on its face and as applied to Vishnevski. The Court will not dismiss count 5 of the indictment.

I.    **CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant Yaroslav Vishnevski's Motion to Dismiss the Indictment Pursuant to the Second Amendment to the United States Constitution and *New York State Rifle & Pistol Association, Inc. v. Bruen* (Doc. 98).

**IT IS SO ORDERED.**
**DATED**: April 21, 2026

_____
**J. PHIL GILBERT**
**United States District Judge**